IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| CRAIG A. MULLANI, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 08-5108-SSA-CV-SW-WAK ) |
| MICHAEL J. ASTRUE, Commissioner, Social Security Administration, | ) ) ) |
| Defendant. | ) ) |

## ORDER

Claimant Craig Mullani seeks judicial review,[1] pursuant to 42 U.S.C. § 405(g), of a final administrative decision denying disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1383 *et seq.* He claims he became disabled beginning on December 18, 2004, due to residual chronic right ankle, leg and shoulder pain; a sleep disturbance; fatigue; a history of alcoholism with relapses; a major depressive disorder; bipolar disorder; general anxiety disorder; and impaired memory and concentration.

The parties' briefs were fully submitted, and on September 1, 2009, an oral argument was held. The sole issue for review is whether there is substantial evidence on the record to support the finding of the Administrative Law Judge (ALJ) that plaintiff is capable of working if he ceases alcohol use.

"Title II of the Social Security Act provides for the payment of insurance benefits to persons who suffer from a physical or mental disability, and Title XVI provides for the payment of disability benefits to indigent persons. The Act further provides that 'an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his

---

[1]With the consent of the parties, this case was assigned to the United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(c).

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .' 42 U.S.C. § 423(d)(2)(A) (2003)." Lewis v. Barnhart, 353 F.3d 642, 645 (8th Cir. 2003).

In reviewing the administrative record, the court must sustain the Commissioner's decision if the findings are supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000). The court may not, however, "rubber stamp" the Commissioner's decision, but must examine both the evidence that supports and detracts from the administrative determination. Piercy v. Bowen, 835 F.2d 190, 191 (8th Cir. 1987); Cline v. Sullivan, 939 F.2d 560, 564 (8th Cir. 1991).

The claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. § 423(d)(1). See Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995). To meet the statutory definition, "the claimant must show (1) that he has a medically determinable physical or mental impairment which will either last for at least twelve months or result in death, (2) that he is unable to engage in any substantial gainful activity, and (3) that this inability is the result of his impairment." McMillian v. Schweiker, 697 F.2d 215, 220 (8th Cir. 1983).

If the claimant establishes the impairment is sufficiently severe to prevent return to a former occupation, the burden shifts to the Commissioner to produce evidence the claimant can perform other substantial gainful employment. Buck v. Bowen, 885 F.2d 451, 454 (8th Cir. 1989). The Commissioner need not find a specific job opening for the claimant, but must demonstrate that substantial gainful activity is realistically within the capabilities of the claimant. McMillian, 697 F.2d at 221.

When reviewing the record to determine if there is substantial evidence to support the administrative decision, the court considers the educational background, work history and present age of the claimant; subjective complaints of pain or other impairments; claimant's description of physical activities and capabilities; the medical opinions given by treating and examining physicians; the corroboration by third parties of claimant's impairments; and the testimony of vocational experts when based upon proper hypothetical questions that fairly set forth the claimant's impairments. McMillian, 697 F.2d at 221.

2

Mullani is in his mid-forties and has two years of college in addition to his high school education. He had a good work record through 2002, and worked as a private contractor, department store stocker, laborer and supervisor in a manufacturing company.

Plaintiff's history indicates substantial problems when he was under the influence of alcohol, including jail time for driving under the influence, fights, and hospital treatment. In December 2004, he was hit by a car and fractured the tibia and fibula in his right leg and his right distal clavicle (collar bone). The fractures in his right leg required surgery, and a rod with four screws was installed. He has been diagnosed and treated for several mental health disorders.

In March 2007, plaintiff was evaluated by an independent psychologist, Dr. Whisman, to assess his eligibility for Medicaid. Objective clinical testing included an MCMI-III. Whisman gave plaintiff a GAF score of 48 and indicated he had cyclothymic disorder and generalized anxiety disorder. Whisman opined that Mullani had emotional dysfunction that would preclude him from work.

Between April 2007 and January 2008, plaintiff saw a nurse practitioner for his mental health problems. Medications were prescribed and plaintiff was assessed a GAF score of 50 on two separate occasions. He was not always compliant with his medication, had some continued problems with depression and anxiety, had a violent episode and was referred to the emergency room for admission to a treatment facility. In July 2007 and January 2008, the nurse practitioner completed medical source statements with sufficient categories marked moderately and markedly limited, such that Mullani would be precluded from work. She opined that he would miss four or more days of work per month due to symptoms or the need for treatment.

At the time of his emergency room referral and involuntary admission to a treatment facility in August 2007, his GAF scores were assessed at 30 and 40.

In November 2007, plaintiff had surgery to remove the screws which were placed in his right leg after the 2004 accident. An old nonunion of the clavicle fracture was noted.

Also in November 2007, Mullani was evaluated by Dr. Kent at the request of the Social Security Administration. She confirmed diagnoses of major depression, severe; bipolar disorders, NOS; obsessive compulsive disorder that needed to be ruled out; general anxiety disorder that needed to be ruled out; panic disorder without agoraphobia in partial remission, and

3

alcohol dependence in reported remission. She assessed his GAF at between 50 and 60, and predicted only minimal improvement with treatment.

In January 2008, plaintiff underwent objective psychological testing and a clinical examination with Dr. Brooks. She confirmed some of the above-noted diagnoses, assessed a GAF score of 40, and opined that plaintiff's emotional problems would preclude him from consistently performing daily tasks and engaging in work.

The ALJ found that plaintiff's "impairments, including the substance use disorder, meet sections 12.04 and 12.09 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d))." (Tr. 18.) The referenced sections refer to plaintiff's mental impairments. The ALJ found that if plaintiff stopped using alcohol, he would still have a severe impairment, but would not meet the listing requirements. He ultimately determined that if Mullani stopped using alcohol, he would have the residual functional capacity to perform a certain range of medium work. He could understand and remember moderately complex tasks; maintain concentration, persistence and pace at such tasks; interact socially with limited contact with the public, supervisors and coworkers; and adapt to a moderately demanding work environment. He could perform his past relevant work as an assembler fabricator. The ALJ concluded substance abuse was a contributing factor material to the determination of disability, and thus, Mullani was not entitled to benefits.

"The ALJ is required to assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence on the record. 20 C.F.R. § 404.1527(d)(2). 'A treating physician's opinion is generally given controlling weight, but is not inherently entitled to it.' Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006). See 20 C.F.R. § 404.1527(d)(2). An ALJ may elect under certain circumstances not to give controlling weight to treating doctors' opinions. A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir.2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' Id.; see also Hacker, 459 F.3d at 937; 20 C.F.R. § 404.1527(d)(2). It is the ALJ's duty to resolve conflicts in the evidence. See Hacker, 459 F.3d at 936." Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007).

In this case, however, there is not substantial evidence in the record to support the ALJ's conclusions. Plaintiff's treating and consulting physicians indicated that he could not consistently perform certain functions at adequate levels and would miss work on a regular or recurring basis. They indicated their opinions were not based upon alcohol use. Dr. Kent, for whom the ALJ gave greater deference, didn't express an opinion about how much work plaintiff would miss, or indicate what plaintiff could do on a daily basis. Her opinion was of the maximum that plaintiff could do. See Tr. 366-67. She indicated that it was reasonable to expect only minimal improvement in the foreseeable future if treatment recommendations for multimodal treatment was followed.

The Eighth Circuit has repeatedly held that "the inquiry must focus on the claimant's ability 'to perform the requisite . . . acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world'." Tang v. Apfel, 205 F.3d 1084, 1086 (8th Cir. 2000).

Mullani met his burden of showing he lacked the residual functional capacity to perform work on a daily basis, and the ALJ did not have sufficient and substantial evidence in the record to determine that alcoholism was material to plaintiff's impairments.

The court is aware, nevertheless, that many of plaintiff's lifestyle choices contributed to his impairments and the records suggest they made them worse. It is possible that without alcohol use, plaintiff's mental health would improve and he would be capable of working. The record, however, does not contain substantial evidence of that or of evidence which would allow this court to sustain the ALJ's decision.

For these reasons and those set forth in more detail in the claimant's brief and at the oral argument, it is

ORDERED that the decision of the Commissioner is reversed and the case is remanded to the Commissioner under Sentence 4, 42 U.S.C. § 405(g), for an award of benefits.

Dated this 14th day of September, 2009, at Jefferson City, Missouri.

/s/ *William A. Knox*

WILLIAM A. KNOX
United States Magistrate Judge